## MONTANA CATHOLIC MISSIONS v. MISSOULA COUNTY.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF MONTANA.

No. 151. Submitted December 13, 1905,—Decided January 2, 1906.

In order that the Circuit Court may have jurisdiction where diverse citizenship does not exist it must appear, by a statement in legal and logical form, such as good pleading requires, that there is a controversy really involving the construction or application of the Federal Constitution or that the validity or construction of a treaty or statute made under its authority is drawn in question.

The Circuit Court has no jurisdiction of an action, where diverse citizenship does not exist, to recover taxes where the right depends upon statutes of the State and no claim to exemption is based on any provision in the Federal Constitution, or on any Federal statute or treaty with Indians; nor can it be assumed from the complaint in this case on any Federal ground that cattle, belonging to a religious organization and roaming over an Indian reservation, are exempt from taxation by the State because the organization devotes its property to purposes of charity among the Indians; nor can such exemption be claimed on the ground that the property is one of the means and instrumentalities of the Federal Government.

THE plaintiff in error commenced this action in the Circuit Court of the United States for the District of Montana, to recover from the defendant the amount of certain back taxes, which it alleged had been illegally assessed and which it had been compelled to pay in order to prevent the seizure and sale of the property owned by it, and upon which the taxes were levied. Both parties to the action were residents of the State of Montana at the time it was commenced. The defendant demurred to the complaint upon the ground, among others, that the court had no jurisdiction of the person of the defendant or of the subject matter of the action. The demurrer was sustained by the court, and the complaint dismissed on the sole ground that it had no jurisdiction, and the court has certified the question of jurisdiction directly to this court, as provided for in the fifth section of the act of 1891. 26 Stat. 826; 827; 1 Comp. Stat. U. S. 549.

The following is the complaint:

The plaintiff above named complains to the court, and alleges:

I. That it is and since prior to the year 1890 has been a corporation organized and existing under the provisions of chapter 34, fifth division of the Compiled Statutes of the State of Montana, relating to the incorporation of religious, benevolent and other like societies, and that its purposes are set forth in its articles of incorporation, as follows: –

The particular business or object of said corporation shall be to hold the legal title to real estate in the Territory of Montana,

for the use and in trust for the Society of Jesus, also to hold and in trust for said society all funds, property and effects of said society, or any members thereof, or any person or persons, corporation or corporations, conveyed, transferred, delivered or assigned to the said coporation, for the use and benefit of said society; to conduct, erect, govern and maintain churches, colleges, schools and libraries, and all other such necessary and useful enterprises as may be properly connected with the society and corporation. The general business and object of said corporation shall be to inculcate and further the interests of Christian education among the inhabitants of the Territory of Montana, including the Indians and other residents on reservations within the said Territory, and also to advance the interests of the Christian religion through the erection and maintenance of churches, colleges and schools and the preaching of the gospel.

II. The Society of Jesus referred to in the said articles of incorporation is an association or order of ministers of the gospel, none of the members of which can, under the rules of the said order, hold or does hold any property in his own right.

III. Plaintiff further avers that about the year 1854 the said Society of Jesus established a mission among the Flathead Indians, then residing in the western portion of what is now the State of Montana, and stationed among them members of the said order, with directions to teach, educate, enlighten and care for the said Indians. That the said mission being so established, members of the said order so deputed went among the said Indians, and from about the year 1854 to the present time have continued in the work of teaching, educating and enlightening the said Flathead Indians.

IV. The plaintiff further avers that since the creation of the Flathead Indian reservation in the State of Montana, members of the said order, commonly known as Jesuit Fathers, have, by the direction of said order and by permission of the Indians living and entitled to live within the same, and the Government of the United States, been permitted to reside within the said

reservation for the purpose of teaching and educating the Indians residing thereon, and that they have been, during all of said period, continuously engaged in the work of teaching and educating the said Indians.

V. That with the permission of the Indians inhabiting and entitled to inhabit the said reservation and the Government of the United States, the said Jesuit Fathers have constructed on the said reservation, at great expense, extensive school buildings, with dormitories, and in connection therewith, for the purpose of teaching the said Indians the manual arts, a blacksmith shop, wagon shop, printing office, saddlery shop, shoe shops, bakeries, and other shops of like character, and with the same purpose cultivate fields and gardens.

VI. That for the more successful conduct of the training and education of the Indians, the said Jesuit Fathers take into their care and custody at tender ages the children of the said Indians, and keep them at the said schools, and clothe, feed and house them until they arrive at mature years, and that they now have and for more than ten years last past have had in their charge and care upwards of two hundred and fifty of the children of the Indians residing on and entitled to reside on the said reservation.

VII. That for many years the Government of the United States, in recognition of the value of the work of the said Jesuit Fathers in the training and education of the said Indians, appropriated and paid to them large sums of money for the purpose of carrying on the said work of educating the said Indians and caring for their children, but that such contributions are no longer made by the Government.

VIII. That with a view to provide means for the carrying on of the said work of educating the said Indians the said Jesuit Fathers have acquired a large band of neat cattle, which roam over and feed upon the said reservation. That the right to keep and graze the said cattle upon the lands included within the said reservation was, long prior to the year 1895, granted to the Jesuit Fathers by the Indians residing upon the said reservation

and entitled to reside thereon, which right was confirmed by the acquiescence and permission of the Government of the United States, and that the cattle now owned by them or by the plaintiff herein, as hereinafter set out, now graze upon the lands included within the said reservation by the express permission of the Indians residing and entitled to reside thereon, and of the Government of the United States.

IX. That a large number of the said cattle are annually killed and consumed as food by the children of the Indians so residing on and entitled to reside on the said reservation, and who are under the care of the said Jesuit Fathers, as aforesaid, and by the fathers in charge of the said children and assistants employed by them in the work of educating the said Indians, and that others of said cattle are annually shipped to Eastern markets, and the income derived from the sale of the same is devoted to, and used exclusively for, the work carried on by the said Fathers on the said reservation, of educating the said Indians, as hereinbefore set out, and that all the said income is consumed in the said work.

X. That a large portion of the work of rounding up the said cattle, branding and otherwise caring for them, slaughtering and shipping the same, is done by the Indians residing on the said reservation, under the direction of the said Fathers, and that the said Indians are enabled by this employment to earn in part a livelihood, and are instructed and gain experience in the business and occupation of cattle raising and are encouraged themselves to engage in it, a business for the conduct of which the said reservation is particularly adapted.

XI. That prior to the year 1895 all property, so as aforesaid acquired by the said Jesuit Fathers, was conveyed to the plaintiff herein, to hold the same in trust for the said Jesuit Fathers, and that by such conveyance it now has the legal title to all of the cattle acquired by the said Jesuit Fathers on the said reservation and the increase thereof. And plaintiff avers that it is and at all times since its organization has been an institution of purely public charity, and that all of the cattle now

owned by it, or which have been owned by it since the year 1895, or at any time, have been and are used exclusively for educational purposes, as hereinbefore set forth.

XII. And plaintiff further avers that it is its purpose in the future to devote all cattle now on the said reservation, or which it may acquire thereon, and any income derived from the sale of the same, to the same purposes to which they have heretofore been devoted, as hereinbefore set out, and that it has no purpose now, nor has it had at any time any purpose, to devote any portion of said cattle or any income derived from the sale of the same to any purpose other than the education and training of the Indians residing or entitled to reside on the said reservation, and that it never has made and does not contemplate making any profit out of the raising of the said cattle, with the intent to devote the same to any other purpose.

XIII. And plaintiff avers that, notwithstanding the facts aforesaid, the defendant, County of Missoula, which is one of the counties of the State of Montana, through its treasurer, annually since the year 1897 has demanded of the plaintiff that it pay to the said county taxes upon all cattle owned by it and being upon the said reservation, and threatened to seize and sell the said cattle or so much thereof as might be necessary to satisfy the taxes demanded unless the same should be paid.

XIV. That pursuant to such demand and to prevent the seizure and sale of the said cattle, or so many thereof as might be necessary, the plaintiff, under protest, on or about November 23, 1898, paid to the said county and to its treasurer, who turned the same over to the said county as taxes claimed by it to be due on account of cattle owned by the said plaintiff on the said reservation for the years 1897 and 1898, the sum of $1,257.48; that the plaintiff, under protest, on or about November 22, 1899, paid to the said county and to its treasurer, who turned the same over to the said county, as taxes claimed by it to be due on account of cattle owned by the said plaintiff on said reservation for the year 1899, the sum of $867.82; that the plaintiff, under protest, on or about November 26, 1900, paid

to the said county and its treasurer, who turned the same over
to the said county, as taxes claimed by it to be due on account
of cattle owned by the said plaintiff, on the said reservation
for the year 1900, the sum of $661.20; and that plaintiff, under
protest, on or about November 26, 1901, paid to the said county
and to its treasurer, who turned the same over to said county,
as taxes claimed by it to be due on account of cattle owned by
the said plaintiff on the said reservation for the year 1901, the
sum of $321.95, and plaintiff avers that it neither had nor
owned any cattle "at any time since 1895," in the county of
Missoula, State of Montana, except such cattle as it held on the
said reservation as hereinbefore set out, and that the said taxes
were exacted of it upon the said cattle. "All of which were
reared on the said reservation and fed on grasses and herbage
grown thereon."

XV. And now plaintiff avers that the defendant is indebted
to it on account of said payments, by it made, as hereinbefore
set out, in the sum of three thousand one hundred and eight
and 45/100 dollars ($3,108.45), with interest on the sum of
$1,257.48 from the 23d day of November, 1898, amounting to
$345.66; for interest on $867.82 from the 22d day of November,
1899, amounting to $169.35; for interest on the sum of $661.20
from the 26th day of November, 1900, amounting to $75.55;
and for interest on the sum of $321.95 from the 26th day of
November, 1901, amounting to the sum of $11.03.

Wherefore plaintiff demands judgment for said amounts, to-
gether with interest as above set forth, and for its costs.

*Mr. T. J. Walsh* for plaintiff in error:

The Circuit Court had jurisdiction as the case was one
arising under the Constitution and laws of the United States,
*Osborn* v. *Bank,* 9 Wheat. 821; *New Orleans* v. *Mississippi,*
102 U. S. 135; *Gold Washing Co.* v. *Keyes,* 96 U. S. 199;
*Briscoe* v. *So. Kansas Ry.,* 40 Fed. Rep. 277; *Manigault*
v. *Ward,* 123 Fed. Rep. 707; *Illinois* v. *Adams,* 180 U. S. 28;
*Illinois Central* v. *Chicago,* 176 U. S. 646; *Railway Co.* v. *Rail-*

*road Co.,* 68 Fed. Rep. 2; *Railroad Co.* v. *Davis,* 132 Fed. Rep. 629.

The case comes under the rule that property of Indians is not taxable by the State.  *Kansas Indians,* 5 Wall. 757; although it is conceded that the right to taxation extends to property of people other than Indians on the reservations.  *Thomas* v. *Gay,* 169 U. S. 26; *Wagoner* v. *Evans,* 170 U. S. 588; *Truscott* v. *Land & Cattle Co.,* 73 Fed. Rep. 60.  With regard to property on the reservations in which the Indians are interested the power does not exist.  *Cosier* v. *McMillan,* 22 Montana, 489. The Indians are interested in the cattle; they are used to support them, and to tax them would be equivalent to taxing the income of the land, which would be the same as taxing the land itself.  *Income Tax Case,* 157 U. S. 259; *State* v. *Collector,* 20 Atl. Rep. 292.

The property is a part of the means used by the General Government to carry out its powers.  As to what the mission has accomplished and what it does to aid and assist the Government, which has appropriated money to carry on the work, see Treaty with Flathead Indians of July 16, 1855; Revision of Indian Treaties, 383; Smead's Report of September, 1898; Part I, Ann. Rep, Secy. Interior, 1901, Indian Aff. 260; Vol. 18, House Doc. 56th Cong. 1st Sess. p. 220; Rep. Commissioner Ind. Aff. 1892, p. 294.

The State can do nothing that will destroy or impair the efficiency of the guardianship of the United States over the Indians, *State* v. *Cooney,* 80 N. W. Rep. 696; *United States* v. *Rickert,* 188 U. S. 431, or to tax any means or instrumentality of the Government.  *McCulloch* v. *Maryland,* 4 Wheat. 316; *Page* v. *Pierce County,* 64 Pac. Rep. 801; *Van Allen* v. *Assessors,* 3 Wall. 573.

The cattle are property devoted to educational purposes. *Book Agents* v. *Hinton,* 19 L. R. A. 289; *State* v. *Fisk,* 87 Tennessee, 233; *New Haven* v. *Trustees,* 22 Atl. Rep. 156; *Hospital* v. *Birdsall,* 42 Atl. Rep. 853; *Sisters of Charity* v. *Chattam,* 9 L. R. A. 198; *State* v. *Johnson,* 43 Atl. Rep. 573; *Casiano*

v. *Academy*, 64 Texas, 673; *People* v. *Barton*, 63 App. Div. N. Y. 581. ·

, The property being vested in a purely charitable association is under all the circumstances of this case impressed with a public character. *Mormon Church Case*, 136 U. S. 1.

When Federal jurisdiction is invoked on account of legislation claimed to impair the obligation of a contract, it is not necessary to prove the existence of a contract, but only that the Indians claim to have an interest in the cattle. · *Railroad Co.* v. *Citizens' Co.*, 166 U. S. 557; nor is it necessary to point out the specific provision of the Constitution or the treaty or statute under which the claim is made. ~Crystal Springs Co.~ v. *City*, 76 Fed. Rep. 153; *Bridge* v. *Hoboken*, 1 Wall. 116, 143; *McCullough* v. *Commonwealth*, 176 U. S. 102, 118.

There was no appearance or brief filed for defendant in error.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

There is nothing on the face of the complaint above set forth - to show either the existence of any question involving the construction or application of the Federal Constitution, or that the constitutionality of any law of the United States, or the validity or construction of any treaty made under its authority, was drawn in question. This must appear in the complaint by the statement in legal and logical form, such as good pleading requires. *Arbuckle* v. *Blackburn*, 191 U. S. 405, 413; *Spencer* v. *Duplan Silk Co.*, 191 U. S. 526, 530. It must appear that the suit really and substantially involves a controversy of such a character... This pleading seems simply to be a claim that the plaintiff is exempt from taxation on the cattle which it owns, because it is an institution of purely public charity, and it would seem from that fact that it was claiming such exemption under some act of the State of Montana, and that its right to recover back these taxes depended upon a statute of that State.

·There is no provision in the Federal Constitution, neither is there any Federal law, nor any treaty between the United States and the Indians, that is referred to in the complaint, and it is not averred therein that the claim of the plaintiff to be exempt from taxation is founded upon any constitutional provision or law or treaty of the United States. It cannot be assumed, from any averment in the complaint, that the alleged right of a private owner of property to be exempt from taxation thereon, because it was devoted to purposes of charity among the Indians, was founded upon any Federal ground.   On the contrary, it would seem to be plain that it was based upon some statute of the State wherein the tax was imposed and collected which exempted from state taxation property wholly devoted to charity.   The case is, therefore, not one which from the subject matter of the controversy is apparently and in its essence of a Federal nature, or one that involved any of the foregoing questions of Federal right.   *Swafford* v. *Templeton,* 185 U. S. 487.

But it is now urged that the entire beneficial use or ownership of the property taxed is in tribal Indians, and that it is, therefore, not subject to taxation by or under state authority; also that the property is made use of by the Federal Government, and that it is one of the means and instrumentalities adopted by it through which it carries out its governmental purposes, and such property is, therefore, not subject to be taxed by the State.

That the entire beneficial use or ownership of the property taxed is in tribal Indians, while the legal title only is in plaintiff, is not alleged in the complaint, and such a conclusion does not follow from the allegations to be found in that pleading.   It is true that the property of Indians living in the tribal state, and so recognized by the Government, is withdrawn from the operation of state laws and is exempt from taxation thereunder. *The Kansas Indians,* 5 Wall. 737, 757; *United States* v. *Rickert,* 188 U. S. 432.   The expression, beneficial use or beneficial ownership or interest, in property is quite frequent in the

law, and means in this connection such a right to its enjoyment as exists where the legal title is in one person and the right to such beneficial use or interest is in another, and where such right is recognized by law, and can be enforced by the courts, at the suit of such owner or of some one in his behalf. And one is also said to have the beneficial ownership of land who has done everything to entitle him to a patent from the Government, and who, therefore, has the legal right to such patent, and all that remains to be done is for the proper officer to issue it. *Wisconsin Central R. R. Co.* v. *Price County*, 133 U. S. 496; *Central Pacific R. R. Co.* v. *Nevada*, 162 U. S. 512. In such case the land is taxable to such owner, though he has not the legal title. He is the beneficial owner. If such were the case here, it might then be said that the Indians really owned such property, and that it was therefore exempt from taxation. But, as we have said, there is no such averment in the complaint, and no such inference can be drawn from the facts therein set forth. Taking the complaint as it is, it shows on its face that the Indians have neither any legal nor equitable title to the property, neither have they any legal or equitable right to its beneficial use, and it also appears from the complaint that the property is owned unconditionally and absolutely by the plaintiff. The plaintiff, as the owner of these cattle, may, at any time, abandon its present manner of using them and may devote them, or any income arising from their ownership, to any other purpose it may choose, and the Indians would have no legal right of complaint. The plaintiff might refuse to spend another dollar upon the Indians upon these reservations, and refuse to further maintain or aid them in any way whatever, and no right of the Indians would be thereby violated, nor could they call upon the courts to enforce the application of the plaintiff's property, or the income thereof, to the same purposes the plaintiff had theretofore applied them. There is nothing in *Mormon Church* v. *United States*, 136 U. S. 1, which in the remotest degree applies to this case. This court has heretofore determined that the Indians' interest in this kind of property,

situated on their reservations, was not sufficient to exempt such property, when owned by private individuals, from taxation. *Thomas* v. *Gay*, 169 U. S. 264; *Wagoner* v. *Evans*, 170 U. S. 588. In the first of above-cited cases the right to graze over the reservation was leased by the Indians to the owners of the cattle, and it was alleged that if the cattle were taxed the value of the lands would be reduced, because the owners of the cattle would not pay as much for the right to graze as they would if their cattle were not subjected to taxation, and that therefore the tax was, in effect and substance, upon the land. This court held that the tax put upon the cattle of the lessees was too remote and indirect to be deemed a tax upon the lands or privileges of the Indians, citing *Erie Railroad* v. *Pennsylvania*, 158 U. S. 431, and other cases, as authority for the decision. This is reaffirmed in the second case above cited. In this case the Indians have not even given a lease, and the owners are not obliged to pay anything for the privilege of grazing, and may, as we have said, devote the property, or the income thereof, to purposes wholly foreign to the Indians themselves. However meritorious the conduct of the owners of the cattle may be, in devoting the income or any portion of the principal of their property to the charitable work of improving and educating the Indians (and we cordially admit the merit of such conduct), we cannot see that there is, on that account, the least claim for exemption from taxation because of any Federal provision, constitutional or otherwise.

Nor is there any merit in the proposition that the plaintiff is made use of by the Government of the United States, and is one of the means used by it to carry out its obligations to the Indians, under the Constitution or laws of the United States, and that therefore the property of the plaintiff which is thus used is not subject to state taxation. No such averment of fact is to be found in the pleading; nor does any such conclusion arise from the facts which appear therein. The Government may lease a building from a private owner for the purpose of better carrying on its governmental duties, and yet the building is not

such an instrumentality of government as prevents its taxation by or under state authority.   Congress has not constituted this corporation an agency of its own for the purpose of discharging any duties which the Government may owe to the Indians.   It has, as the complaint avers, made in the past some appropriations from time to time to the corporation to aid it in its own work among the Indians, but that is far from constituting the corporation an agency of its own, to carry into effect its own governmental powers, granted by the Constitution or by law. And even such appropriations ceased years ago.

The case, in short, is one of that class where we have frequently held that the claim of a Federal question must have some foundation of plausibility, *St. Joseph &c. R. R.* v. *Steele*, 167 U. S. 659; *McCain* v. *Des Moines*, 174 U. S. 168, in order to give jurisdiction.   This has none.

The Circuit Court was right in refusing jurisdiction, and its judgment dismissing the complaint on account of the lack thereof, is

*Affirmed.*