R. H. CASPERSON, Appellant,

v.

Howard C. MEECH and Iris Meech, Appellees.

No. 2573.

Supreme Court of Alaska.

Aug. 25, 1978.

---

Clem H. Stephenson, Fairbanks, for appellant.

Patrick E. Murphy, Valdez, for appellees.

Before BOOCHEVER, Chief Justice, and RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

BURKE, Justice.

This appeal concerns the liability of a seller of real property when his purchaser commits acts resulting in the constructive eviction of tenants holding under a lease given to them by the seller.

On or about August 1, 1974, appellant R. H. Casperson, the owner of a building in Fairbanks, Alaska, leased a portion of the premises to Howard and Iris Meech, appellees. The leased premises consisted of a kitchen and dining room which were used by the lessees as a restaurant.

On September 30, 1974, Casperson executed a purported "bill of sale" of the building to E. Alan Ferguson d/b/a Alaskan Service Co. That document provided:

Sept. 30, 1974

Bill of Sale

This agreement between Alaskan Service Co. D.B.A. E. Alan Ferguson and R.H. Casperson Sr. is as follows:

E. Alan Ferguson, Alaskan Service Co. agrees to purchase Lot 1 (one) Block 1 (one) R.H. Casperson subdivision as recorded in Fairbanks recording district, to include all buildings and improvements (Building known as Spaghetti Factory) for One Hundred Thousand Dollars ($100,000.00). Payment will be made as follows—Downpayment—Two Thousand dollars ($2000.00) paid upon signature of this agreement. Five Hundred Dollars a month ($500.00) for Thirty Six (36) months. In addition Eight percent (8%) interest will be paid quarterly during this period. One Balloon payment of Eighty Thousand ($80,000.00) to be paid on Sept. 30, 1977.

R.H. Casperson Sr. agrees to convey a Warrenty [sic] Deed for the above said consideration.

Signed.

E. Alan Ferguson /s
Alaskan Service Co.

R.H. Casperson Sr. /s

Witness
Joseph C. Williams /s

Although there was no provision in the document regarding possession, Ferguson entered into possession of the basement of the building shortly after the bill of sale was executed.

Casperson, despite his agreement with Ferguson, continued to manifest certain attributes of ownership. He kept his key to the restaurant and did not give one to Ferguson. He was frequently around the property and made repairs or corrected problems. On one such occasion, in early October, he repaired a leak in the upstairs utility room. On another, when he had a key to the basement, he turned the heat on. He worked on the furnace with Joseph Williams, Ferguson's cohort. Yet, he did tell Mrs. Meech that Ferguson was the new owner.

A few days before the bill of sale was signed, Ferguson tried unsuccessfully to buy the Meeches' business. After he entered into possession of the basement, he and Williams proceeded to drive the Meeches out of business by shutting off the electricity, heat, and water. While the Meeches paid for these services, the controls for the electricity and heat were located in the basement. Prior to Ferguson's possession of the area, the Meeches had had access to these controls by means of stairs leading from the restaurant. After taking possession of the basement, Ferguson removed the stairs and padlocked the door. Casperson was made aware of these actions through his own observations and through Mrs. Meech's complaints. Mrs. Meech frequently turned to him for help, but on most occasions he said that there was nothing he could do. After October 2, 1974, Mrs. Meech was never able to re-open the restaurant.

Mrs. Meech obtained a temporary restraining order against both Casperson and Ferguson on October 4, 1974, and a preliminary injunction against Ferguson on November 7. The case was set for trial against both defendants, on a theory of breach of the covenant of quiet enjoyment, on February 24, 1975. At that time the Meeches' attorney indicated his willingness to dismiss Casperson from the suit. Casperson's attorney, however, requested attorney's fees. The trial court suggested that counsel file a stipulation, which would include an agreement on attorney's fees if that could be worked out. The case was continued until February 27 for other reasons. No stipulation was submitted in the interim. On that date Casperson had to call his attorney, who, not expecting to go to trial, was not present in court. The Meeches' attorney then stated that the offer of dismissal was contingent on no attorney's fees. Casperson's counsel did not find that to be satisfactory and stated that he was ready to go to trial.

After trial, in its formal findings of fact and conclusions of law, the superior court stated:

It is clear from the evidence that legal title to the property in question never changed from Casperson to Ferguson and that Casperson remained the legal owner. It is equally clear that the contract in evidence is no more than an executory contract of sale that did not give Ferguson 'beneficial ownership' of the property. The document is more in the form of an earnest money [agreement] or an agreement to sell. The most that Ferguson actually obtained was a cause of action for specific performance, if and when he ever complied with the terms of the document.

Thus, the court concluded that Casperson was "responsible for failing to take the necessary action to correct the problems brought about by Ferguson."[1] He was held jointly and severally liable, with Ferguson, for all damages accruing to the Meeches after October 31, 1974.[2] Ferguson was held liable for punitive damages as well, upon a finding that his acts were intentional and malicious.

■ The main thrust of appellant's argument on appeal is that the superior court erred in finding that there was an ineffective transfer of title that left him under a duty to protect his tenants from the wrongful acts of Ferguson. We agree and hold accordingly.[3]

■ There was no evidence of any express promise on the part of Casperson to guarantee the Meeches' quiet enjoyment of the leased premises. Thus, the superior court correctly concluded that Casperson's liability, if any, for the actions of Ferguson, to whom he had conveyed his reversionary interest, depended upon his obligation under an implied promise.[4] However, we believe that the court erred when it further concluded that Casperson remained liable for a breach of that implied promise.

■ Section 16.3 of the Restatement (Second) of Property (1976), provides in part:

(a) An obligation that is imposed on one of the parties to a lease without the aid of an express promise may rest on an implied promise found to exist from the facts and circumstances.

Comment (a) to the foregoing section states, in pertinent part:

The normal facts and circumstances of entering into [a] lease transaction justify the implication of a promise by the landlord that the tenant will not be disturbed in his enjoyment of the leased property by . . . the landlord or by anyone whose conduct is attributable to the landlord.

Id. at 146 [citation omitted]. However, as the same comment further indicates:

[T]he implied promise of the landlord is interpreted as not including a disturbance of the tenant by an assignee of the landlord's reversionary interest, so that after a transfer, the landlord remains liable on his implied promise only for disturbance of the tenant by himself, or someone whose conduct is attributable to him.

1. The court concluded that Casperson had breached the covenant of quiet enjoyment implied in the Meeches' lease. The court found Casperson liable not because he was vicariously liable for Ferguson's acts, but because he failed in the performance of his own duty to make a reasonable effort to correct the problems which Ferguson caused.

2. Damages for the month of October were found to be "solely from the actions of Ferguson." Thus, only Ferguson was held liable for those damages.

3. Appellees argue, inter alia, that "Casperson, in failing to properly attack Judge Blair's findings of fact, has waived any objection to such

findings." Such argument is without merit. Rule 52(b), Alaska R.Civ.P. provides in part:

When findings of fact are made in actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the objection has made in the court an objection to such findings or has made a motion to amend them or a motion for judgment. [emphasis added].

4. See note 1, supra.

Under some circumstances, as when the landlord encourages his assignee to disturb the tenant, the assignee's conduct may be attributable to the landlord.

■ In the instant case, there is no evidence that Ferguson's conduct was attributable to Casperson. Thus, the sole issue is whether the privity of estate existing between the Meeches and Casperson was severed by the purported transfer of Casperson's reversionary interest to Ferguson. If it was, under the Restatement view, which we hereby adopt as the rule of law for Alaska, Casperson was not liable for Ferguson's disturbance of the Meeches occurring after the transfer.

It seems quite clear that the "bill of sale" was really a contract to sell the property. Under that contract, Ferguson became obligated to pay a particular purchase price, in return for which Casperson was required to convey, by warranty deed, legal title to the property. In the sense that Casperson was entitled to retain the legal title until such time as the full purchase price was paid, the contract was "executory." However, that such was the case, and that the legal title had never passed to Ferguson, does not support the trial court's further conclusion that the contract "did not give Ferguson 'beneficial ownership' of the property." That is exactly what it did.

In *Catholic Missions v. Missoula County,* 200 U.S. 118, 127, 26 S.Ct. 197, 200, 50 L.Ed. 398, 402 (1906), the Supreme Court of the United States defined that term as follows:

The expression 'beneficial use' or 'beneficial ownership or interest' in property is quite frequent in the law, and means, in this connection, such a right to its enjoyment as exists where the legal title is in one person and the right to such beneficial use or interest is in another, and where such right is recognized by law, and can be enforced by the courts, at the suit of such owner or of some one in his behalf.

In *Fikes v. First Federal Savings and Loan Association of Anchorage,* 533 P.2d 251, 258–59 (Alaska 1975), we held that a purchaser under an earnest money agreement acquires an equitable interest in the property, entitling him to demand a conveyance of the legal title upon fulfillment of his obligation under the agreement. We hold that the contract in this case, *i. e.,* the "bill of sale," had the same effect, and that upon execution thereof Ferguson became the beneficial or equitable owner of the property. As such Ferguson was entitled to possession and Casperson, although still holder of the legal title, was without authority to control the use of the premises. Thus, the privity of estate that once existed between Casperson and the Meeches was terminated. Casperson was thereby relieved of his obligation to assure the Meeches' continued quiet enjoyment of the leased premises. Such obligation became solely that of his transferee, Ferguson.

The judgment of the superior court is reversed and this case remanded with instructions to enter a judgment in favor of appellant Casperson.

REVERSED and REMANDED.

BOOCHEVER, C. J., with whom RABINOWITZ, J., joins, dissenting.

BOOCHEVER, Chief Justice, with whom RABINOWITZ, Justice, joins, dissenting.

I believe that Casperson should remain liable on his implied promise of quiet enjoyment and habitability, and that his liability is secondary to that of Ferguson, who is primarily liable.

Sec. 16.3 of the Restatement (Second) of the Law, Property (1977) states in Subparagraph 1:

An obligation that is imposed on one of the parties to a lease without the aid of an express promise may rest on an implied promise found to exist from the facts and circumstances of the lease transaction. That implied promise is treated the same as an express promise in applying the rules of §§ 16.1 and 16.2.

Sec. 16.1 states:

(1) A transferor of an interest in leased property, who immediately before the transfer is obligated to perform an ex-

press promise contained in the lease that touches and concerns the transferred interest, continues to be obligated after the transfer if:

(a) the obligation rests on privity of contract, and he is not relieved of the obligation by the person entitled to enforce it; or . . . .

Since Sec. 16.3 imposes the same obligation in the case of an implied promise, the only question to be resolved is whether there was an implied promise of quiet enjoyment for the full term of the Casperson-Meech lease. In the comments to Sec. 16.3, it is stated that the implied promise of the landlord:

is interpreted as not including a disturbance of the tenant by an assignee of the landlord's reversionary interest, so that after a transfer, the landlord remains liable on his implied promise only for disturbances of the tenant by himself, or someone whose conduct is attributable to him.

Furthermore, in Restatement (Second) of Property Sec. 16.3 at 146 (1977), it is stated:

No authority has been found on the precise issue of whether the original landlord's liability on the implied promise of quiet enjoyment continues after transfer of the reversion.

In support of this statement, the comment cites *Gribbie v. Toms*, 70 N.J.Law 522, 57 A. 144 (1904), which does not seem directly in point. Moreover, the comment states that there is no clear authority as to whether the landlord's obligation under an implied warranty of habitability continues after the transfer of his interest, the problem presented by the case we are considering. The comment refers to *Old Town Development Co. v. Langford*, 349 N.E.2d 744 (Ind. App.1976), which indicates that the implied warranty of habitability is considered to be an implied promise but does not discuss the landlord's continuing liability after transfer.

The real question in this case is whether, by entering the lease, Mr. Casperson impliedly promised quiet enjoyment and habitability of the premises during the term of the lease. In that regard, I think we should look to the terms of the lease. There are no agreements spelled out on behalf of the lessor touching on this issue with the exception of Paragraph 8 which states:

If, and only if, Lessor is then the owner of and has not sold said premises Lessor grants to Lessees an option to renew said lease for a term of one year beginning January 1975, at a rent of Five Hundred Dollars ($500.00) per month payable monthly in advance. If, and only if, Lessor has not sold said premises at the expiration of said option then Lessor grants to Lessees a second option to renew said lease for an additional year commencing January 1, 1976, at a rent to be negotiated and agreed upon by the parties.

It is thus apparent that where Casperson wished to have his obligations under the lease (for granting an option of renewal) terminated in the event that he sold or transferred his interest, he expressly so provided. It seems to me that he should be charged with the same burden if he wants to avoid his liability on the implied promise of quiet enjoyment and habitability. I also believe that those promises should be considered as extending for the full term of this lease.

We are not confronted with a situation involving a very long term lease, such as a 99-year lease. In that situation, it might be construed that the implied promise would last only during a period prior to the landlord's transfer of his interest. I would not favor that construction, however, as it seems that one entering into a 99-year lease can take sufficient care to set forth specifically that his obligations would not continue after the transfer of his interests.

The court made findings of fact specifically stating: "Under such lease, the Meeches were entitled to quiet enjoyment of the property until at least January 1, 1975." If the covenant extended for the full period to January 1, 1975, even under the Restatement comment, there would be liability. The whole question is the length of time that the quiet enjoyment was implied, and in the case of a short term lease

such as this, I cannot conceive that the parties did not intend the promise of quiet enjoyment to apply for the full term of the lease. I conclude that Casperson should be held liable for the breaches of the implied promises, but that such liability is secondary to that of Ferguson who was primarily responsible for the damage.