**David Earl HUMPHREYS, Plaintiff,**

**v.**

**Fred G. BURKE, individually and in his capacity as Commissioner of Education of the State of New Jersey; Raymond J. Zane, individually and in his capacity as a member of the Senate of the State of New Jersey; Joseph F. Zach, an individual; August E. Thomas, in his capacity as an Administrative Law Judge of the State of New Jersey; the Office of Administrative Law of The State of New Jersey, an Agency within the Executive Branch of the government of the State of New Jersey; and the Department of Education of The State of New Jersey, an Agency within the Executive Branch of the government of the State of New Jersey, Defendants.**

Civ. A. No. 80–3053.

United States District Court,
D. New Jersey.

Dec. 3, 1980.

Steven R. Cohen, Selikoff & Cohen, P. A., Cherry Hill, N. J., for plaintiff.

M. Kathleen Duncan, Deputy Atty. Gen., Trenton, N. J., for defendants Fred G. Burke, Joseph F. Zach, August E. Thomas, Office of Administrative Law of the State of New Jersey and Dept. of Ed. of the State of New Jersey.

Raymond J. Zane, pro se.

## OPINION

GERRY, District Judge.

Before the court is plaintiff's prayer for preliminary and permanent injunction restraining the defendants from proceeding to hearing in a case filed with the Commissioner of Education entitled *In the Matter of Tenure Hearing of David Earl Humphreys*, Docket No. 397–11/76, OAL Docket No. EDU 700–80. The plaintiff also seeks to transfer jurisdiction of the proceeding to this court for hearing and adjudication. Finally, plaintiff seeks damages for alleged violations of his constitutional rights and compensation for costs and attorney's fees expended in the protection of his civil rights. In support of his prayer for relief, plaintiff alleges that the defendants' conduct during the course of administrative proceedings has exhibited prejudice, bias and improper influence, and has so tainted the administrative proceedings as to deny the plaintiff due process. In addition, plaintiff claims that he has already suffered loss of due process because defendant Burke issued a decision on the merits of his case at a time when he had only procedural motions before him.

This dispute arose in November of 1976. On November 13, 1976, the plaintiff Humphreys, a tenured teacher in the Pennsville School System, was arrested and charged with possession of controlled dangerous substances (apparently 25 grams of marijuana and 5 grams of hashish). By resolution dated November 13, 1976, the Pennsville Board of Education suspended the plaintiff without pay from the performance of his duties pursuant to N.J.S.A. 18A:6–11. Charges of conduct unbecoming a teacher were certified by the Board to the Commissioner of Education on November 23, 1976. On December 27, 1976, plaintiff brought a motion to dismiss the pending proceedings. The Commissioner denied the motion on June 11, 1977, but held the matter in abeyance pending a determination by a court of proper jurisdiction of the criminal charges.

In May of 1978, the plaintiff entered a plea of guilty to the indictment, which charged him with possession of a controlled dangerous substance, and sentence was imposed on June 26, 1978.

In March of 1978, the plaintiff had filed as part of the tenure proceedings a motion requesting reconsideration of a prior determination denying him 120 days' salary. In ruling on plaintiff's request, the Commissioner found N.J.S.A. 2A:135–9 applicable. The statute provides that any person holding a position under the government of any political subdivision "who pleads guilty . . . to an indictment . . . charging him with the commission of a misdemeanor . . . touching the administration of his . . . position or which involves moral turpitude, shall forfeit his . . . position and cease to hold it from the date of . . . entry of plea." Because of plaintiff's intervening guilty plea and sentence, the Commissioner held that N.J.S.A. 2A:135–9 mandated dismissal of the plaintiff from his tenured position. This determination was reversed by the State Board of Education on the ground that, even if plaintiff's entry of a guilty plea triggered N.J.S.A. 2A:135–9, the Teacher Tenure Law and/or due process required that plaintiff be given a hearing to tell his side of the story. The State Board remanded the case to the Commissioner for a plenary hearing.

Thereafter, the file for plaintiff's case was transmitted to the Office of Administrative Law for a hearing in accordance with the provisions of N.J.S.A. 52:14B–1 *et seq.* Administrative Law Judge Thomas,

who was assigned the case, held a prehearing conference on May 1, 1980, at which time the attorneys for both parties jointly "sanitized" the file, removing all documents which they agreed were improperly included therein and sealing them. The documents have remained sealed. Also at the May 1, 1980 conference, both attorneys agreed that Judge Thomas could make an impartial determination based upon the facts presented at the hearing and agreed that he should continue to hear the case.

Subsequently, plaintiff's attorney reviewed the sealed file which contains the alleged prejudicial correspondence and alleged evidence of communications between defendants Burke, Zane and Zach pertaining to the merits of plaintiff's case (see plaintiff's complaint pages 8–11). Plaintiff sought to copy these documents, and when Administrative Law Judge Thomas asked him to bring a formal motion, plaintiff's counsel protested that documents would be destroyed. However, plaintiff's counsel has never brought a formal motion.

In early September 1980, plaintiff's attorney sought to have the hearing postponed because of a conflicting PERC hearing which had been scheduled by mistake for the same day. Administrative Law Judge Thomas suggested that he seek the agreement of his adversary. Because the School Board is paying plaintiff's salary for each day until this dispute is resolved, plaintiff's counsel admitted that the Board would not agree to a postponement unless plaintiff agreed to forego payment of salary (which plaintiff refused).

On September 16, 1980, plaintiff herein filed an Order to Show Cause to enjoin the September 29, 1980 hearing.

Plaintiff invokes the jurisdiction of this court under § 1343(3) and (4), under § 1331 and under § 1332. Plaintiff claims that his suit is authorized by § 1983, since he seeks to redress a deprivation of constitutional rights. He also avers that this action arises under the 5th and 14th Amendments. While plaintiff asserts diversity jurisdiction, he does not specifically set forth a state law cause of action (presumably plaintiff's state

law claim consists of whatever rights he is entitled to under the tenure law, should this court transfer jurisdiction of that proceeding here; in addition, plaintiff claims damages for injury to reputation and emotional distress caused him by the actions of defendants Burke, Zane and Zach).

### (1) *Jurisdiction*

Before we reach the merits of plaintiff's claim for injunctive relief, we must ascertain whether the claim is properly within the jurisdiction of this court. Plaintiff asserts two bases for "arising under" jurisdiction–§ 1331 and § 1343. Plaintiff states that:

> Defendants *have deprived* and will continue to deprive plaintiff of a fair hearing before a fair and impartial adjudicator as required by the Tenure Employees Hearing Law, N.J.S.A. 18A:6–10, *et seq.*, in connection with the tenure charges lodged against him. Therefore, defendants have deprived and will continue to deprive plaintiff of property without due process of law, in violation of rights guaranteed by the Fifth and Fourteenth Amendments to the Constitution. (Plaintiff's Complaint ¶ 30, p. 12) (emphasis added).

If plaintiff has been deprived of due process, we would have jurisdiction under § 1343 or under § 1331. *See Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946); *Chicago, B & Q R. Co. v. Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897). *See also* Wright & Miller, *Federal Practice and Procedure* § 3573 at 484. However, where the facts alleged by plaintiff do not establish an existing deprivation of due process, there is no basis upon which the court can assert jurisdiction. *Hagans v. Lavine,* 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974). *See also Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979); *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973). "[T]he claim of a federal question must have some foundation of plausibility ... in order to give jurisdic-

tion." *Montana Catholic Missions v. Missoula County*, 200 U.S. 118, 130, 26 S.Ct. 197, 201, 50 L.Ed. 398 (1906). In addition, § 1343(3) by its express terms requires that there be a deprivation of a constitutional right before a cause of action thereunder would arise.

■ Plaintiff has claimed that the receipt of correspondence from and discussions with defendant Zane, the August 1978 decision dismissing plaintiff from his teaching position and an apparent awareness by individuals in the Commissioner's Office of the "concerns of the citizens of the community" have deprived him of a fair hearing. While we agree that the dismissal of a teacher without a hearing might, in the appropriate circumstances, rise to the level of a due process violation, we are not herein presented with such a situation. Although the August 1978 decision did order dismissal of plaintiff, this determination was reversed by the State Board precisely to insure plaintiff had an opportunity to be heard. Therefore, there is no evidence that plaintiff has suffered a due process deprivation. While plaintiff has speculated that the hearing on September 29 will deny him due process, such speculation is an insufficient foundation on which to base federal jurisdiction. *Poe v. Ullman*, 367 U.S. 497, 501, 81 S.Ct. 1752, 1754, 6 L.Ed.2d 989 (1961).

■ Plaintiff has also asserted that the court has jurisdiction of this action under § 1343(4) which provides for original jurisdiction in the district courts in an action commenced by any person:

> To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights.

The only Act of Congress which plaintiff has identified in his complaint is 42 U.S.C. § 1983. Therefore, we assume for purposes of jurisdiction under § 1343(4) that plaintiff seeks to found his cause of action on § 1983. The Supreme Court has held that § 1983 is not itself a source of substantive rights, but, instead, provides only a remedy for the deprivation of a substantive right contained

in some other Act of Congress. *See Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). The allegations in plaintiff's complaint, which assert a cause of action only under § 1983, thus cannot confer jurisdiction on this court under § 1343(4).

■ Plaintiff has also asserted jurisdiction under § 1332. While we agree that this action involves citizens of different states, we must nevertheless decline to exercise jurisdiction because we find that plaintiff has failed to present an actual controversy as required by Article III. (See discussion *infra*.)

*(2) Ripeness*

■ We have already indicated that the facts contradict plaintiff's allegation that he *has been deprived* of a fair hearing. Therefore, the only allegation remaining is that the conduct of defendants *will deprive* plaintiff of due process at some future time. In order to redress this claimed future deprivation, the plaintiff must demonstrate that there is a substantial present controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant adjudication at this time. *Lake Carriers' Ass'n. v. MacMullan*, 406 U.S. 498, 506, 92 S.Ct. 1749, 1755, 32 L.Ed.2d 257 (1972). The controversy must be real, not hypothetical. *Nashville, C. & St. L. R. Co. v. Wallace*, 288 U.S. 249, 264, 53 S.Ct. 345, 348, 77 L.Ed. 730 (1933).

■ The restriction of our jurisdiction to cases and controversies derives from Article III. In addition, there are sound policy reasons which support our declining to exercise jurisdiction over alleged future harm. First of all, the nature and function of the courts is, historically, a limited one. In addition, the Supreme Court has admonished us not to entertain constitutional questions in advance of the strictest necessity. *Parker v. County of Los Angeles*, 338 U.S. 327, 333, 70 S.Ct. 161, 163, 94 L.Ed. 144 (1949).

■ Plaintiff seeks to secure adjudication in this court on equitable grounds.

Since such relief is discretionary with the court, it is clearly inappropriate to exercise such discretion to effectuate a premature constitutional decision. *See Rescue Army v. Municipal Court*, 331 U.S. 549, 573, 67 S.Ct. 1409, 1421, 91 L.Ed. 1666 (1947).

██ A claim of impending future harm arising out of the predicted bias of state administrative officers may present a sufficiently live controversy. *See Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). However, in *Gibson* there was clear evidence of (1) a personal financial stake in the outcome of the administrative proceeding on the part of the adjudicative body; (2) a previous state court action by the adjudicative body against the party whose rights were to be adjudicated; and (3) the existence of an unconstitutional statutory scheme establishing the adjudicative body. There is no such clear evidence in the instant case. Plaintiff alleges that because defendant Burke is biased, therefore he will not receive a fair hearing. The only evidence of bias is the existence of prejudicial letters in plaintiff's file, which there is no evidence defendant Burke has read, communications with Senator Zane (which defendants aver, and plaintiff's information does not dispute, concerned only the procedural aspect of plaintiff's case; and the newspaper article attached to the Senator's letter of July 26, 1978, does not alter our conclusion as it was apparently submitted for an entirely independent reason), and the issuance of the Commissioner's decision of August 11, 1978. Plaintiff also claims that at the pre–hearing conference defendant Thomas stated he had reviewed the prejudicial material, "and that he might have to disqualify himself from hearing the case," by which facts plaintiff seems to imply that defendant Thomas is also biased. However, plaintiff neglects to mention that at the pre–hearing conference defendant Thomas asked *both counsel* whether he should recuse himself, and *both counsel* agreed that Judge Thomas should continue as the hearing officer, and that defendant Thomas could render a fair decision on the basis of the facts that would be presented at the hearing. Since plaintiff's counsel

agreed that Judge Thomas should continue to conduct the hearing, and since it is clear from a review of the statutory scheme and from the decision of the State Board's reversing of Commissioner Burke's decision that neither inherent bias, adverse financial interest, nor an unconstitutional scheme exist here, we find that the claim of future harm is not justiciable within the rule of *Gibson v. Berryhill.*

The holding of the court in *Martin v. Merola*, 532 F.2d 191 (2d Cir. 1976) would seem to support our conclusion of non–justiciability. In that case, plaintiffs, indicted on felony charges for activities in connection with loan–sharking operations, instituted a damage action under § 1983 alleging that their constitutional right to a fair trial had been infringed by actions of defendants, the District Attorney and two assistants, who, in announcing their arrests, stated that they were linked to crime families. The court dismissed the action holding that, until the state prosecution had been concluded, it was simply impossible to make any reasoned evaluation of plaintiffs' claim that they had been deprived of the opportunity to secure a fair trial.

### (3) *Exhaustion*

██ While plaintiff does not address this issue directly, he does cite *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), in which the Supreme Court held that it would not require plaintiffs to exhaust state administrative remedies in an action brought under § 1983. *Gibson* does not dispense with the requirement of exhaustion where plaintiff states a cause of action under § 1983. Rather, the Court found exhaustion not required in the facts of that case because plaintiff attacked the constitutionality of the composition of the adjudicative body. There is no such attack made on the administrative scheme here. In addition, in *Gibson* the administrative proceedings had not yet commenced (though defendants had reactivated the charges). In the instant case, the proceedings have been underway for some time. Since the facts in *Gibson* which counseled

against enforcement of the exhaustion requirement are not present here, we conclude that the exhaustion doctrine would prevent our considering the merits of plaintiff's claims at this time. *See Illinois Commerce Commission v. Thomson*, 318 U.S. 675, 63 S.Ct. 834, 87 L.Ed. 1075 (1943); *First National Bank v. Board of County Commissioners*, 264 U.S. 450, 44 S.Ct. 385, 68 L.Ed. 784 (1924). We find that the purpose of the exhaustion requirement–to insure that a litigant's representations as to the allegedly unconstitutional state action are in fact correct–is clearly served by our dismissal of this matter.

(4) *Younger Principles*

■ In *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), the Supreme Court ruled that, while actions for injunctions directed to state officers brought under § 1983 are not prohibited by 28 U.S.C. § 2283, the principles of equity, comity and federalism which, under appropriate circumstances, restrain a federal court from issuing an injunction must still be considered. In the Court's most recent consideration of these principles, it explained:

> ... in a Union where both the States and the Federal Government are sovereign entities, there are basic concerns of federalism which counsel against interference by federal courts, through injunction or otherwise, in legitimate state functions, particularly with the operation of state courts.

*Trainor v. Hernandez*, 431 U.S. 434, 441, 97 S.Ct. 1911, 1916, 52 L.Ed.2d 486 (1977). Although *Gibson* held that principles of comity and federalism did not require dismissal of the action, the decision of the court makes clear that it was the particular nature of the state forum, its unconstitutional makeup, that rendered it incompetent to consider plaintiff's constitutional claims and thus obviated dismissal pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In the instant case, the statutory scheme contains sufficient procedural safeguards to protect plaintiff's asserted constitutional interest–i. e., his due process right to a fair hearing. In fact, these safeguards have already redounded to plaintiff's benefit (plaintiff's dismissal was reversed by the State Board of Education and remanded for plenary hearing). The state procedures are demonstrably competent to handle plaintiff's due process claims.

*Rosko v. Pagano*, 466 F.Supp. 1364 (D.N.J.1979) does not dictate a contrary conclusion. In *Rosko*, the court granted plaintiff an injunction restraining defendant from proceeding with a disciplinary hearing. However, in that case the hearing examiner was under the control of plaintiff's superior officer, the superintendent of the State Police. In addition, the superintendent had admitted a predisposition against the plaintiff. Moreover, plaintiff asserted the First Amendment as a defense in the disciplinary proceeding. The court sent the proceeding to the Office of Administrative Law for hearing. In the instant case, the matter is already in the hands of the OAL. Furthermore, there is no evidence that the Commissioner is predisposed against the plaintiff except for plaintiff's speculations. Plaintiff does not claim a defense to the administrative proceedings based on his exercise of constitutional rights, a claim which, if it did exist, might render the matter inappropriate for resolution in a state forum.

Plaintiff claims that *Younger* principles are only appropriate to bar federal injunctive relief against state criminal prosecutions. However, the Court has extended *Younger* to certain state civil proceedings. *See Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Judice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Huffman v. Pursue Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Geiger v. Jenkins*, 401 U.S. 985, 91 S.Ct. 1236, 28 L.Ed.2d 525 (1971), *aff'g* 316 F.Supp. 370, 372 (N.D.Ga.1970) (three judge court). Therefore, rather than consider whether these proceedings are civil, quasi–criminal or criminal, we think the more important question is whether "basic concerns of federalism counsel against interference in le-

gitimate state functions." *Trainor*, 431 U.S. at 441, 97 S.Ct. at 1916. Clearly, the employment and retention of public school teachers are matters of extreme concern to the states. The removal of teachers whose conduct so merits is a legitimate state function. In addition, the issues in the tenure hearing are within the special expertise of the State Education Department in particular and the state in general. No federal constitutional questions are presented within the context of the tenure proceeding (though plaintiff has asserted a due process right to a fair hearing as a basic proposition, he has no constitutional defenses to detenuring). This court has no particular expertise in matters of teacher tenure. Therefore, based on all the circumstances, we conclude that an exercise of jurisdiction over the state proceedings herein would be not only inappropriate but a violation of the state's legitimate and exclusive zone of interest. *Younger* principles clearly dictate a dismissal of this action.

### (5) *Abstention*

Even if neither *Younger* principles nor absence of a justiciable controversy required dismissal of this action, the *Pullman* doctrine would mandate abstention until questions of state law could be determined by the state administrative agency and the state courts. *See Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Decisions of the Court subsequent to *Pullman* indicate that where a matter is intimately connected with matters of local law, abstention is necessary. *Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959).

### CONCLUSION

We are precluded from entertaining this action because (1) we lack jurisdiction; (2) the case is not ripe; (3) plaintiff must exhaust his administrative remedies; (4) *Younger* counsels against it. Even if we were to retain jurisdiction, we would have to abstain pending resolution of the state proceedings.

Although it is not necessary, to the court's determination, we find that the plaintiff has not satisfied the injunctive requirement of demonstrating the likelihood of prevailing on the merits. The court finds plaintiff's basis for concluding bias on the part of Administrative Law Judge Thomas without merit.