STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-1001


KATHRYN C. ORTEGO

VERSUS

TUNICA BILOXI INDIANS OF LA
d/b/a PARAGON CASINO


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 2
PARISH OF RAPIDES, NO. 01-07642
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

**********

**MARC T. AMY**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and
Michael G. Sullivan, Judges.

**AFFIRMED.**

**Knight E. Doggett**
**Flournoy & Doggett**
**Post Office Box 1270**
**Alexandria, LA   71309**
**(318) 487-9858**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
        **Kathryn C. Ortego**

**Joseph B. Guilbeau**
**Juge, Napolitano, Guilbeau, Ruli & Frieman**
**3838 N. Causeway Boulevard, Suite 2500**
**Metairie, LA   70002**
**(504) 831-7270**
**COUNSEL FOR DEFENDANT/APPELLEE:**
        **Tunica Biloxi Indians of LA, d/b/a Paragon Casino**

**Brent P. Frederick**
**Breazeale, Sachse & Wilson, L.L.P.**
**Post Office Box 3197**
**Baton Rouge, LA   70821**
**(225) 387-4000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Tunica Biloxi Indians of LA, d/b/a Paragon Casino**

AMY, Judge.

In this workers' compensation matter, the claimant, who allegedly suffered a work-related accident in March 2001 at the employer-tribe's casino, filed a disputed-claim form contesting the employer's termination of her benefits. More than a year after the disputed claim was filed, and after the employer had answered, prepared pre-trial statements, and had twice fixed the case for trial, it filed an exception of lack of subject matter jurisdiction, citing a new tribal ordinance providing for the resolution of workers' compensation disputes exclusively within tribal courts. The workers' compensation judge granted the exception and dismissed the claimant's cause of action. From this judgment, the claimant appeals. We affirm.

### Factual and Procedural Background

The record indicates that the claimant, Kathryn Ortego, was employed as a barback/laborer by the Tunica-Biloxi Indians of Louisiana, d/b/a Paragon Casino ("the Tribe"), in Marksville, Louisiana. While at work on the morning of March 11, 2001, Ms. Ortego sustained chemical burns. She reported the injury to her supervisors that same morning and sought medical assistance. As a result of her injury, Ms. Ortego received workers' compensation benefits until May 2001, when they were terminated. Ms. Ortego filed a disputed claim with the Office of Workers' Compensation on October 26, 2001. The record reflects that over approximately the next year and a half, the Tribe answered Ms. Ortego's disputed-claim petition, prepared pre-trial statements, and agreed to have the case fixed for hearing on two separate occasions.

On March 7, 2003, the Tribe filed a declinatory exception of lack of subject matter jurisdiction, arguing that it was immune from suit due to its sovereign status; that it had not waived this immunity; and that the 1992 Class III gaming compact

between it and the State of Louisiana specifically reserved jurisdiction to the Tribe over civil matters relevant to gaming. The Tribe further pointed out that a recent tribal ordinance dictated that workers' compensation claims were to be heard by tribal courts and that these tribunals were to apply Louisiana workers' compensation law, as outlined in La.R.S. 23:10, *et seq.* In his written reasons for judgment, the workers' compensation judge noted that sovereign status had been conferred upon the Tribe and that it had not waived its immunity to suit. Moreover, he noted, the recent tribal constitutional ordinance reaffirmed the Tribe's immunity and provided that Tunica-Biloxi court was the sole forum for resolution of workers' compensation suits arising from activities conducted on tribal land. Accordingly, the workers' compensation judge granted the Tribe's exception and dismissed Ms. Ortego's claims. In her sole assignment of error on appeal, Ms. Ortego contends that the workers' compensation judge erred as a matter of law in granting the Tribe's exception of lack of subject matter jurisdiction and in dismissing her claims against the Tribe and its workers' compensation insurer. For the following reasons, we affirm.

**Discussion**

On appeal, Ms. Ortego insists that the Class III gaming compact between the Tribe and the State clearly indicates that the State retained jurisdiction over workers' compensation claims arising from tribal gaming enterprises. Ms. Ortego cites several provisions of the compact in support of her position. First, she argues, §1(A) states that where the compact is silent, the laws of Louisiana apply. Ms. Ortego observes that the compact does not address workers' compensation claims; as such, she posits, Louisiana workers' compensation law is in effect with respect to tribal business

2

enterprises.  Ms. Ortego's second contention is that a reading of §3(B)[1] and §3(C)[2] evinces the drafters' intent that the State retain jurisdiction over constitutionally mandated matters such as workers' compensation.  Third, Ms. Ortego points out that §§10(A)(4)(a), (c), and (d) of the compact[3] require the Tribe to maintain workers'

---

[1]Section 3(B) of the compact states as follows:
The Tunica-Biloxi Indian Tribe of Louisiana and the State of Louisiana shall retain all sovereignty and immunity to suit while discussing, negotiating, or confecting this Tribal-State Compact.  The Tunica-Biloxi Indian Tribe of Louisiana and the State of Louisiana intend and agree that all issues purely of Tribal law are to be determined in accordance with the legal mechanisms of the Tunica-Biloxi Indian Tribe of Louisiana, and that all other issues are to be determined in accordance with federal law, where applicable, the provisions of this Tribal-State Compact, where applicable, and the laws of the State of Louisiana, where applicable.

[2]Section 3(C) of the compact provides as follows:
In the interest of clarity of authority, and to preserve and to protect the health, safety, and welfare of all, the Tunica-Biloxi Indian Tribe of Louisiana and the State of Louisiana shall:
  (1)    Apply all federal laws applicable to Indian gaming, lands, or subject matter as being fully operative and applicable within all Tribal lands and areas of gaming activity.
  (2)    Preserve the full territorial and subject matter jurisdiction of the Tunica-Biloxi Indian Tribe of Louisiana.
  (3)    Preserve the full territorial and subject matter jurisdiction of the State of Louisiana.
  (4)    Accord the State of Louisiana concurrent criminal jurisdiction and concurrent law enforcement authority within the lands of the Tunica-Biloxi Indian Tribe of Louisiana and the State of Louisiana, when exercising any subject matter jurisdiction accorded the State of Louisiana pursuant to this Tribal-State Compact.
  (5)    Accord the Tunica-Biloxi Indian Tribe of Louisiana, including its duly constituted Tribal law enforcement authorities, full territorial jurisdiction, as well as concurrent law enforcement authority within the lands of the Tunica-Biloxi Indian Tribe of Louisiana and within any Parishes where they have been duly commissioned by a local law enforcement agency, when exercising any subject matter jurisdiction accorded the Tunica-Biloxi Indian Tribe of Louisiana pursuant to this Tribal-State Compact, or when exercising the authority accorded to the Tunica-Biloxi Indian Tribe of Louisiana pursuant to any agreements made with a local law enforcement agency.

[3]Section §10(A)(4), subsections (a), (c), and (d) of the compact state as follows:
(A) All Class III gaming shall be conducting [sic] in such a manner that ensures, to the maximum extent practicable, that it is secure, honest, and that the interests of the Tunica-Biloxi Indian Tribe of Louisiana, the State of Louisiana, and the public are protected at all times.  The State of Louisiana shall fully cooperate with and assist the Tunica-Biloxi Indian Tribe of Louisiana in meeting its obligations in this regard.
      . . . .

  (4)    (a)    The Tunica-Biloxi Indian Tribe of Louisiana shall maintain comprehensive general liability and workers' compensation

3

compensation insurance and mandate that the terms of each policy preclude the Tribe from claiming sovereign immunity in defense of liability. Ms. Ortego argues that these provisions of the compact suggest that the Tribe does not have sovereign immunity with respect to workers' compensation claims such as hers. Fourth, Ms. Ortego points out that §2(H)[4] plainly indicates that the State did not cede its jurisdiction over workers' compensation claims to the Tribe. In her fifth argument, Ms. Ortego points out that §10(A)(6)[5] of the compact gives the Tribe jurisdiction over tort claims initiated by casino patrons. She notes that this jurisdiction is expressly given and contends that a similar grant of workers' compensation jurisdiction to the

insurance coverage from any admitted or authorized insurer subject to direct action under Louisiana law. Such policies shall maintain ample liability and property loss coverage to protect against any foreseeable loss or risk. Such insurance policies shall not be on an claims-made basis. The coverage for such loss or risk shall be the greater of $4,000,000 or twice the insurable risk of the insured.

. . . .

(c)    The gaming management company and all other entities contracting with the Tunica-Biloxi Indian Tribe of Louisiana shall maintain such policies of comprehensive general liability and workers' compensation insurance as required by State law, and shall maintain proof of such continuous coverage.

(d)    Each such policy of insurance, shall contain, or be deemed to contain, an exclusion that the insurer or the insured shall not be entitled to make any claim of sovereign immunity in defense of liability, but shall be liable, including court costs and attorneys' fees incurred by the State of Louisiana, for its insured, as though the insured were a Louisiana domiciliary, as well as a provision requiring immediate notice to the State of Louisiana and the Tunica-Biloxi Indian Tribe of Louisiana of any change in coverage or default or delay in payment of premium or other occurrence which threatens the continuity or amount of coverage.

[4]Section 2(H) of the compact states as follows:
The jurisdiction and waiver of sovereign immunity provided by this Tribal-State Compact shall be strictly limited to matters and issues arising directly from this Tribal-State Compact.

[5]Section 10(A)(6) of the compact states as follows:
The Tunica-Biloxi Indian Tribe of Louisiana shall maintain reasonable procedures for the disposition of tort claims arising from alleged injuries to patrons of its gaming facilities and operation. The Tunica-Biloxi Indian Tribe of Louisiana shall not be deemed to have waived its sovereign immunity from suit with respect to such claims by virtue of any provision of this Tribal-State Compact, but may adopt a remedial system analogous to that available for similar claims arising against the State of Louisiana.

Tribe would have likewise been expressly conferred by the compact. Ms. Ortego observes that the compact is silent with respect to workers' compensation jurisdiction; as such, one could infer that it was not given to the Tribe. Finally, Ms. Ortego emphasizes that according to its terms[6], the compact could only be amended by a written instrument signed by the tribal chairman and by the governor of Louisiana, with the Secretary of the Interior's approval. Ms. Ortego notes that the compact comprises the entire agreement between the Tribe and the State of Louisiana, and the newly enacted ordinance purporting to give the Tribe exclusive jurisdiction over workers' compensation matters cannot supercede the compact because the ordinance was not signed by the governor of Louisiana and was not approved by the Secretary of the Interior. Ms. Ortego cites each of the above portions of the compact in support of her position that her claim should have been allowed to proceed in a Louisiana workers' compensation court.

In reviewing the propriety of a workers' compensation judge's ruling as to factual issues, an appellate court employs the manifest error—clearly wrong standard, as set forth by the Louisiana Supreme Court in *Rosell v. ESCO*, 549 So.2d 840 (La.1989). *Whitlow v. The Shreveport Times*, 02-1215 (La.App. 3 Cir. 4/23/03), 843 So.2d 665, *writ denied*, 03-1406 (La. 9/19/03), 853 So.2d 647. However, where a party contends that a ruling is incorrect due to errors of law, the appellate court must ascertain whether the ruling in question was legally correct. *Belaire v. Don Shetler*

---

[6]Section 2 of the compact states, in pertinent part, as follows:
(I)Relative to the conduct of Class III gaming, this Tribal-State Compact constitutes the entire agreement between the Tunica-Biloxi Indian Tribe of Louisiana and the State of Louisiana, and supersedes all prior written and oral agreements. This Tribal-State Compact may be amended only through a written instrument that is signed by the Tribal Chairman of the Tunica-Biloxi Indian Tribe of Louisiana and by the Governor of the State of Louisiana, and that is approved by the Secretary of the Interior of the United States of America.

*Olds Buick Chevrolet*, 02-1152 (La.App. 3 Cir. 6/4/03), 847 So.2d 723.

The Tribe based its exception of lack of subject matter jurisdiction on the doctrines of tribal sovereign immunity and exhaustion of tribal remedies. These doctrines were born of and developed by the federal jurisprudence. Our determination as to the legal correctness of the workers' compensation judge's ruling requires that we examine the relevant federal case law and the scant relevant jurisprudence of Louisiana courts.

In *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 98 S.Ct. 1670 (1978), the United States Supreme Court outlined the history of the grant of sovereign immunity, usually conferred upon the States and foreign nations, to recognized Native American tribes. The Supreme Court observed that "[a]s separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority." *Id*. at 56, 98 S.Ct. at 1675-76. The Court further noted that:

> Indian tribes are "distinct, independent political communities, retaining their original natural rights" in matters of local self-government. *Worcester v. Georgia*, 6 Pet. 515, 559, 8 L.Ed. 483 (1832); see *United States v. Mazurie*, 419 U.S. 544, 557, 95 S.Ct. 710, 717, 42 L.Ed.2d 706 (1975); F. Cohen, Handbook of Federal Indian Law 122-123 (1945). Although no longer "possessed of the full attributes of sovereignty," they remain a "separate people, with the power of regulating their internal and social relations." *United States v. Kagama*, 118 U.S. 375, 381-382, 6 S.Ct. 1109, 1112-1113, 30 L.Ed. 228 (1886). See *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978).

*Id*. at 55, 98 S.Ct. at 1675. Moreover, the Court provided the following description of tribal sovereign immunity and the means by which a tribe might become susceptible to suit:

> Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers. *Turner v. United States*, 248 U.S. 354, 358, 39 S.Ct. 109, 110,

63 L.Ed. 291 (1919); *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 512-513, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940); *Puyallup Tribe, Inc. v. Washington Dept. of Game*, 433 U.S. 165, 172-173, 97 S.Ct. 2616, 2620-2621, 53 L.Ed.2d 667 (1977). This aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress. But "without congressional authorization," the "Indian Nations are exempt from suit." *United States v. United States Fidelity & Guaranty Co., supra*, 309 U.S., at 512, 60 S.Ct. at 656.

It is settled that a waiver of sovereign immunity "'cannot be implied but must be unequivocally expressed.'" *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976), quoting, *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969).

*Id*. at 58-59, 98 S.Ct. at 1677.

In *Santa Clara Pueblo*, the Supreme Court determined the susceptibility of a Native American tribe to suit by one of its own members. Three years after its decision in *Santa Clara Pueblo*, the Supreme Court was called upon to delimit tribal jurisdiction over non-members. In *Montana v. United States*, 450 U.S. 544, 565-566, 101 S.Ct. 1245, 1258 (1981), the Court issued the following criteria for exercise of such jurisdiction:

To be sure, Indian tribes retain inherent sovereign power to exercise some forms of civil jurisdiction over non-Indians on their reservations, even on non-Indian fee lands. A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements. *Williams v. Lee*, [358 U.S. 217,] 223 [, 79 S.Ct. 269, 272 (1959)]; *Morris v. Hitchcock*, 194 U.S. 384, 24 S.Ct. 712, 48 L.Ed. 1030; *Buster v. Wright*, 135 F. 947, 950 (CA8); see *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 152-154, 100 S.Ct. 2069, 2080-2082, 65 L.Ed.2d 10. A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe. See *Fisher v. District Court*, 424 U.S. 382, 386, 96 S.Ct. 943, 946, 47 L.Ed.2d 106; *Williams v. Lee, supra*, at 220, 79 S.Ct., at 270; *Montana Catholic Missions v. Missoula County*, 200 U.S. 118, 128-129, 26 S.Ct. 197, 200-201, 50 L.Ed. 398; *Thomas v. Gay*, 169 U.S. 264, 273, 18 S.Ct. 340, 343, 42 L.Ed. 740.

The Supreme Court elaborated upon the *Montana* decision in *Strate v. A-1*

*Contractors*, 520 U.S. 438, 446, 117 S.Ct. 1404, 1409-1410 (1997). Justice Ginsburg, writing for the Court, explained that:

> *Montana* thus described a general rule that, absent a different congressional direction, Indian tribes lack civil authority over the conduct of nonmembers on non-Indian land within a reservation, subject to two exceptions: The first exception relates to nonmembers who enter consensual relationships with the tribe or its members; the second concerns activity that directly affects the tribe's political integrity, economic security, health, or welfare.

Justice Ginsburg added that the scope of "consensual relationships" that would subject a non-member to tribal jurisdiction included "'commercial dealing, contracts, leases, or other arrangements.' [*Montana*,] 450 U.S. at 565. . . ." *Strate*, 520 U.S. at 456-457, 117 S.Ct. at 1415.

The doctrine of tribal sovereign immunity has not been without its detractors. The essence of the opposition to the doctrine was distilled by the Supreme Court in *Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.*, 523 U.S. 751, 757-60, 118 S.Ct. 1700, 1704-1705 (1998), as follows:

> The doctrine of tribal immunity came under attack a few years ago in [*Oklahoma Tax Comm'n v. Citizen Band*] *Potawatomi* [*Indian Tribe of Okla.*, 498 U.S. 505, 111 S.Ct. 905 (1991)]. The petitioner there asked us to abandon or at least narrow the doctrine because tribal businesses had become far removed from tribal self-governance and internal affairs. We retained the doctrine, however, on the theory that Congress had failed to abrogate it in order to promote economic development and self-sufficiency. *Id.*, at 510, 111 S.Ct., at 909-910. The rationale, it must be said, can be challenged as inapposite to modern, wide-ranging tribal enterprises extending well beyond traditional tribal customs and activities. . . .
> There are reasons to doubt the wisdom of perpetuating the doctrine. At one time, the doctrine of tribal immunity from suit might have been thought necessary to protect nascent tribal governments from encroachments by States. In our interdependent and mobile society, however, tribal immunity extends beyond what is needed to safeguard tribal self-governance. This is evident when tribes take part in the Nation's commerce. Tribal enterprises now include ski resorts, gambling, and sales of cigarettes to non-Indians. See *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 14 (1973); *Potawatomi, supra; Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116

S.Ct. 1114, 134 L.Ed.2d 252 (1996). In this economic context, immunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victims.

These considerations might suggest a need to abrogate tribal immunity, at least as an overarching rule. Respondent does not ask us to repudiate the principle outright, but suggests instead that we confine it to reservations or to noncommercial activities. We decline to draw this distinction in this case, as we defer to the role Congress may wish to exercise in this important judgment.

. . . .

. . . The capacity of the Legislative Branch to address the issue by comprehensive legislation counsels some caution by us in this area. Congress "has occasionally authorized limited classes of suits against Indian tribes" and "has always been at liberty to dispense with such tribal immunity or to limit it." *Potawatomi*, [498 U.S.] at 510, 111 S.Ct., at 910. It has not yet done so.

In light of these concerns, we decline to revisit our case law and choose to defer to Congress.

Our research reveals no federal legislation negating the above-explained doctrine of tribal sovereign immunity.

Until its holding in *National Farmers Union Insurance Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 105 S.Ct. 2447 (1985), the Supreme Court had advanced only one way in which a suit brought against a Native American tribe in district court might be dismissed—sovereign immunity. However, in *National Farmers Union*, the Court announced a second means by which a suit against a tribe might be dismissed: the notion of exhaustion of tribal remedies. In *National Farmers Union*, a member of the Crow Indian Tribe brought suit against the Lodge Grass School District No. 27, a subdivision of the State of Montana, in tribal court and was awarded a judgment. The school district and its insurer, National Farmers Union, brought a suit to enjoin the enforcement of the tribal court's judgment against it in federal district court under 28 U.S.C. § 1331, claiming that tribal court had no jurisdiction over the school district and its insurer, both of whom were non-Indians. Justice Stevens, writing for the Court, commented that: "Until petitioners [i.e., the school district and its insurer] have

exhausted the remedies available to them in the Tribal Court system . . . it would be premature for the federal court to consider any relief." *National Farmers Union*, 471 U.S. at 857, 105 S.Ct. at 2454.

In *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9, 107 S.Ct. 971 (1987), the Supreme Court took under advisement a matter in which the Ninth Circuit affirmed a district court's decision to dismiss a suit against a tribe for lack of subject matter jurisdiction. In its opinion, the Court indicated that the notion of exhaustion of tribal remedies was not a function of jurisdiction but rather was a function of comity, similar to the abstention doctrine of *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236 (1976):

> As the Court's directions on remand in *National Farmers Union* indicate, the exhaustion rule enunciated in *National Farmers Union* did not deprive the federal courts of subject-matter jurisdiction. Exhaustion is required as a matter of comity, not as a jurisdictional prerequisite. In this respect, the rule is analogous to principles of abstention articulated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976): even where there is concurrent jurisdiction in both the state and federal courts, deference to state proceedings renders it appropriate for the federal courts to decline jurisdiction in certain circumstances. In *Colorado River*, as here, strong federal policy concerns favored resolution in the nonfederal forum. See *id.*, at 819, 96 S.Ct. at 1247.

*Iowa Mutual Ins. Co.*, 480 U.S. at 16 n.8, 107 S.Ct. at 976. In accordance with the newly clarified doctrine of the exhaustion of remedies, the Court determined that the district court and the Ninth Circuit erred in dismissing the suit for lack of subject matter jurisdiction. The Court further held that the district court was required to determine whether a stay of its proceedings was necessary while tribal-court proceedings were pending or whether the suit should be dismissed pursuant to the notion of comity—*viz.*, the prudential rule enunciated in *National Farmers Union*. However, the Court instructed, "If state-court jurisdiction over Indians or activities on

10

Indian lands would interfere with tribal sovereignty and self-government, the state courts are generally divested of jurisdiction as a matter of federal law." *Iowa Mutual*, 460 U.S. at 15, 107 S.Ct. at 976. In sum, recalling principles set forth in *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 102 S.Ct. 894 (1982), and *Santa Clara Pueblo*, the *Iowa Mutual* Court stated that: "Civil jurisdiction over [the activities of non-Indians on reservation lands] presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute." *Id.* at 18, 107 S.Ct. at 977.

The confusion that resulted from attempts to correctly apply the exhaustion doctrine was addressed nearly ten years after *Iowa Mutual*, in *Strate*, 520 U.S. 438, 117 S.Ct. 1404. Again, Justice Ginsburg, writing for the Court, explained the doctrine's application vis-à-vis the Court's prior decision in *Montana*:

> The Court's recognition in *National Farmers* that tribal courts have more extensive jurisdiction in civil cases than in criminal proceedings, and of the need to inspect relevant statutes, treaties, and other materials, does not limit *Montana*'s instruction. As the Court made plain in *Montana*, the general rule and exceptions there announced govern only in the absence of a delegation of tribal authority by treaty or statute. . . . In sum, we do not extract from *National Farmers* anything more than a prudential exhaustion rule, in deference to the capacity of tribal courts "to explain to the parties the precise basis for accepting [or rejecting] jurisdiction." 471 U.S., 105 S.Ct., at 2454, 857.

*Strate*, 520 U.S. at 449-450, 117 S.Ct. at 1411. Justice Ginsburg further clarified the interaction of *National Farmers Union*, *Iowa Mutual*, and *Montana*, stating that:

*National Farmers* and *Iowa Mutual*, we conclude, are not at odds with, and do not displace, *Montana*. Both decisions describe an exhaustion rule allowing tribal courts initially to respond to an invocation of their jurisdiction; neither establishes tribal-court adjudicatory authority, even over the lawsuits involved in those cases. Accord, *Brendale v. Confederated Tribes and Bands of Yakima Nation*, 492 U.S. 408, 427, n. 10, 109 S.Ct. 2994, 3006, n. 10, 106 L.Ed.2d 343 (1989) (opinion of White, J.).

*Strate*, 520 U.S. at 448, 117 S.Ct. at 1410.

Our review of the jurisprudence of the United States Fifth Circuit reveals that it has not considered a case in which the relevance of the exhaustion doctrine was questionable, such as in the present case, owing to the fact that no proceedings were ongoing in tribal court when suit was filed in district court. However, in *Garcia v. Akwesasne Housing Authority*, 268 F.3d 76, 81-82 (2d Cir. 2001), the Second Circuit, faced with a situation comparable to the instant matter, offered the following analysis:

> The Supreme Court recently explained: "Exhaustion was appropriate in [both *National Farmers* and *LaPlante*] [sic] because 'Congress is committed to a policy of supporting tribal self-government . . . [which] favors a rule that will provide the *forum whose jurisdiction is being challenged* the first opportunity to evaluate the factual and legal bases for the challenge.'" *El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 484, 143 L. Ed. 2d 635, 119 S.Ct. 1430 (1999) (quoting *National Farmers*, 471 U.S. at 856, 105 S.Ct. 2447) (emphasis added). We have expressed the "general principle" as follows: "Parties who challenge, under federal law, the jurisdiction of a tribal court to entertain a cause of action must first present their claim to the tribal court before seeking to defeat tribal jurisdiction in any collateral or parallel federal court proceeding." *Basil Cook Enters.* [*v. St. Regis Mohawk Tribe*], 117 F.3d [61] at 65 [(2d Cir. 1997)].
>
> These cases bar interference by federal courts to defeat or circumvent the ongoing exercise of jurisdiction by tribal courts; [the plaintiff's] claims, however, are pending nowhere but in the Northern District of New York. Other circuits have required abstention even where no proceeding was pending in tribal court. See *Ninigret Dev. Corp. v. Narrangansett Indian Wetoumuck Hous. Auth.*, 207 F.3d 21, 31 (1st Cir. 2000) ("Where applicable, this prudential doctrine has force whether or not an action actually is pending in a tribal court."); *United States v. Tsosie*, 92 F.3d 1037, 1041 (10th Cir. 1996) ("The exhaustion rule does not require an action to be pending in a tribal court."); *Crawford v. Genuine Parts Co.*, 947 F.2d 1405, 1407 (9th Cir. 1991) (same); see generally Blake A. Watson, *The Curious Case of*

*Disappearing Federal Jurisdiction over Federal Enforcement of Federal Law: A Vehicle for Reassessment of the Tribal Exhaustion Abstention Doctrine*, 80 Marq. L. Rev. 531, 579-80 (1997). These courts impose the exhaustion rule in any action over which a tribal court might have had "concurrent jurisdiction" if the plaintiff had chosen the tribal forum. *Tsosie*, 92 F.3d at 1042; see also *Crawford*, 947 F.2d at 1407; *Ninigret Dev. Corp.*, 207 F.3d at 31.

In *Garcia*, the Second Circuit found that because the plaintiff's claims were based on federal law—the Age Discrimination in Employment Act—instead of tribal law, abstention was not warranted due to the federal courts' "virtually unflagging obligation . . . to exercise [their] jurisdiction." *Garcia*, 268 F.3d at 82 (citing *Colorado River Water Conservation Dist.*, 424 U.S. 800, 817, 96 S.Ct. 1236). At the district-court level, the Tribe's motion to dismiss for lack of subject matter jurisdiction had been granted. The Second Circuit upheld the trial court's determination, not on exhaustion principles, but based on a finding that the Tribe had not waived its sovereign immunity.

We turn now to the interpretations that Louisiana courts have given to the federally developed concepts of sovereign immunity and exhaustion of tribal remedies. The courts of this State have not had many occasions on which to examine the intersection of state and tribal jurisdiction. In *Barbry v. Dauzat*, 576 So.2d 1013 (La.App. 3 Cir.), *writ denied*, 578 So.2d 136 (La.1991), the appeal focused on the propriety of the trial court's determination that the State had jurisdiction over a certain child custody case pursuant to the terms of the Indian Child Welfare Act ("ICWA"). The trial court recognized that the tribal courts had jurisdiction in some instances; however, the applicable federal statute clearly excluded from tribal jurisdiction those matters in which child custody had been granted in a divorce proceeding, as was the situation on appeal. A panel of this court upheld the district court's determination, citing the language of the ICWA, 25 U.S.C. § 1903(1), which expressly withholds

13

jurisdiction from the tribal courts for purposes of child custody where placement was made in a divorce proceeding in state court pursuant to 25 U.S.C. § 1911(a).

The circumstances surrounding the appeal in the matter of *Bonnette v. Tunica-Biloxi Indians*, 02-919, c/w 02-920, 02-921 (La.App. 3 Cir. 5/28/03), ___So.2d ___, were very similar to those of the instant appeal before this court. In *Bonnette*, employees of the Tunica-Biloxi Tribe brought suit against their employer, asserting that the Tribal-State compact regarding Class III gaming activities included a waiver of sovereign immunity. The Tribe filed an exception of lack of subject matter jurisdiction, which the trial court granted. On appeal, a panel of this court reviewed the United States Supreme Court's decisions regarding sovereign immunity, pointing out that, according to *C&L Enterprises Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 121 S.Ct. 1589 (2001), sovereign immunity must be expressly waived; moreover, pursuant to *Nevada v. Hicks*, 533 U.S. 353, 121 S.Ct. 2304 (2001), a tribe "may still exercise civil jurisdiction over nonmembers who maintain consensual relationships with the tribe or its members or when it is necessary to protect tribal self-government or to control internal relations." *Bonnette*, ___ So.2d at ___. After examining the compact at issue, the reviewing panel of this court determined that the trial court did not err in granting the Tribe's exception of lack of subject matter jurisdiction because the Tribe had not waived its sovereign immunity via the compact. The companion cases to *Bonnette*, *Dunn v. Tunica-Biloxi Indians*, 02-920 (La.App. 3 Cir. 5/28/03), ___So.2d ___, and *Jeansonne v. New Horizon Kids Quest, Inc.*, 02-921 (La.App. 5/28/03), ___So.2d ___, were procedurally identical to *Bonnette* and were decided by the same panel of this court. The trial court's decision in *Dunn* and in *Jeansonne* to grant an exception of lack of subject matter jurisdiction was affirmed "[f]or the reasons expressed in *Bonnette* . . . ." *Dunn*, ___So.2d___;

14

*Jeansonne*, ___So.2d___. *But see Wyble v. Tunica Biloxi Gaming Econ. Dev.*, 00-534 (La.App. 3 Cir. 11/2/00), 776 So.2d 501 (employee sued employer-Tribe in Louisiana workers' compensation court; Tribe raised no objections as to the court's subject matter jurisdiction).

In the present appeal, Ms. Ortego has cited several provisions of the compact between the State of Louisiana and the Tunica-Biloxi Tribe in support of her contention that the workers' compensation judge erred as a matter of law in granting the Tribe's exception of lack of subject matter jurisdiction because the State of Louisiana retained jurisdiction over workers' compensation proceedings involving tribal employees.

Our examination of the compact reveals that the Tribe did not waive its sovereign immunity with respect to its employees' workers' compensation claims. Contrary to Ms. Ortego's first argument on appeal, the compact's silence on this issue does not mean that Louisiana law applies. As the Supreme Court noted in *Santa Clara Pueblo*, 436 U.S. 49, 98 S.Ct. 1670, tribal sovereign immunity cannot be inferred—instead, it must be expressly waived. The compact's silence with respect to tribal employees' workers' compensation claims does not constitute an express waiver. The Tribe retains jurisdiction in this area through operation of the doctrine of tribal sovereign immunity.

Ms. Ortego's second argument is that §§3(B) and (C) of the compact evince the intent that the State retain jurisdiction over workers' compensation claims. Our reading of these sections is at odds with Ms. Ortego's proposal. Section 3(C) merely indicates that the State retains jurisdiction in those matters in which it previously exercised jurisdiction. Section 3(C) also states that the Tribe retains its jurisdiction,

15

which, applying the principles outlined in *Montana* and *Strate*, above, includes jurisdiction over workers' compensation claims.

In her third argument, Ms. Ortego points to those sections of the compact requiring the Tribe to carry workers' compensation insurance that, by its terms, precludes the Tribe from asserting the defense of sovereign immunity in defense of liability. Ms. Ortego argues in an extrapolation of these sections, that the Tribe does not have sovereign immunity over workers' compensation claims. Based upon our reading of the compact, these provisions do not imply that the defense of sovereign immunity is not available to the Tribe in case of litigation; instead, it indicates that the Tribe may not assert sovereign liability in an attempt to avoid paying on the policy. Moreover, the newly approved tribal ordinance at issue herein mandates that tribal courts apply Louisiana workers' compensation law in deciding workers' compensation disputes; as such, the Tribe, just as any other employer, would rely upon its workers' compensation insurance in payment of claims in appropriate cases.

Ms. Ortego further contends that §2(H) of the compact, reproduced in footnote 4, clearly indicates that the State did not transfer its workers' compensation jursidiction to the Tribe. We note that this section pertains to enforcement of the provisions of the compact itself—i.e., in the event that the State sued the Tribe to enforce the compact, the Tribe could not assert the defense of sovereign immunity, and vice versa. Nothing in §2(H) indicates that the State or the Tribe waived their respective immunity as to matters other than enforcement of the compact terms.

In her fifth argument on appeal, Ms. Ortego contends that the Tribe was given jurisdiction over tort claims in §10(A)(6) of the compact and that a similar grant of workers' compensation jurisdiction to the Tribe would have been express, as well. Jurisdiction over workers' compensation was not the State's to give away. According

16

to the above-cited Supreme Court decisions, the Tribe, not the State, has civil jurisdiction over disputes arising from its consensual relationships with others, even non-members, by virtue of its sovereign status. The Court has also stated that the Tribe would be subject to suit in federal and state courts via an express waiver of the immunity that stems from its sovereign status. No such waiver was given in the instant matter on appeal; as such, the Tribe retained its workers' compensation jurisdiction.

Finally, Ms. Ortego contends that the ordinance declaring the Tribe's intention to exercise sole jurisdiction over workers' compensation claims could not have amended the compact between the Tribe and the State because it was neither signed by the proper dignitaries nor approved by the Secretary of the Interior[7]. We agree with Ms. Ortego's assertion that the ordinance at issue did not change the terms of the compact. However, in this situation, it was not necessary for the ordinance to do so. The Tribe already has jurisdiction over workers' compensation claims owing to its status as a sovereign recognized by the United States, not as a result of this compact. The ordinance merely reaffirms the Tribe's jurisdiction over such matters and mandates that the tribal courts will apply Louisiana workers' compensation law in deciding disputes in this area. Ms. Ortego will therefore receive the benefit of Louisiana workers' compensation law whether her case proceeds in Louisiana courts or in the tribal courts of the Tunica-Biloxi Nation.

---

[7]The text of the Tribal Ordinance, entitled "An Ordinance to Adopt Title 23, Chapter 10 of the Louisiana Revised Statutes Concerning Workers' Compensation," is as follows:

> All of Title 23, Chapter 10 of the Louisiana Revised Statutes, shall be adopted as the law applicable to any workers' compensation claims that arise in the jurisdiction of the Tunica-Biloxi Tribal Court. All of Part IV, "Administration of Claims", including, but not limited to Subpart A, "Office of Workers' Compensation Administration" and Subpart B, "Claim Resolution" and all of their subsections, shall be amended so that any reference to administration by a Hearing Officer and/or the Workers' Compensation Administration, shall be deleted. The Administration of Workers' Compensation Act shall be by the Tunica-Biloxi Tribal Court.

Based upon the above considerations, we do not find that the workers' compensation judge erred as a matter of law in granting the Tribe's exception of lack of subject matter jurisdiction. However, because the Tribe did not assert only one principle in support of its claim that the workers' compensation court lacked subject matter jurisdiction over Ms. Ortego's claim, it is necessary to emphasize the precise reasoning employed in reaching this conclusion, for the sake of clarity.

The Tribe asserted in its exception of lack of subject matter jurisdiction, and it now asserts on appeal, that Louisiana does not have jurisdiction over Ms. Ortego's workers' compensation claim for two reasons: first, due to the doctrine of exhaustion of tribal remedies, and second, due to tribal sovereign immunity.

We note that Ms. Ortego's claim is grounded in Louisiana workers' compensation law and not in tribal law. We further note that Ms. Ortego initially filed suit with the Louisiana Office of Workers' Compensation, not in a Tunica-Biloxi tribal court. As such, we find that the circumstances of Ms. Ortego's case do not lend themselves to an unbending application of the doctrine of exhaustion of tribal remedies as propounded by the Supreme Court in *National Farmers Union* and *Iowa Mutual*, where claims were pending in tribal court before suit was filed in federal court. Instead, the reasoning of the Second Circuit in *Garcia*, reproduced above, is appropriate in the matter before us on appeal. We determine that this case should not have been dismissed as a matter of comity, but rather due to the asserted defense of tribal sovereign immunity.

In *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 145, 102 S.Ct. 894, 905 (1982), Justice Marshall, writing for the Court, observed that "[a] nonmember who enters the jurisdiction of the tribe remains subject to the risk that the tribe will later exercise its sovereign power." In the instant matter on appeal, Ms. Ortego entered the

18

jurisdiction of the Tribe, and the Tribe was free to exert its sovereign immunity with respect to claims sustained by Ms. Ortego, a non-member, while on tribal land.

The record indicates that Ms. Ortego entered into a consensual relationship of employment with the Tunica-Biloxi Tribe, a relationship that was governed, in part, by the compact between the State of Louisiana and the Tribe concerning Class III gaming. Through this consensual relationship, Ms. Ortego submitted herself to the civil jurisdiction of the Tribe, despite her status as a non-member. *See Montana*, 450 U.S. 544, 101 S.Ct. 1245; *Strate*, 520 U.S. 438, 117 S.Ct. 1404. In light of our determination that the Tribe has not waived its sovereign immunity to suit and that the Tribe retained its civil jurisdiction over workers' compensation claims brought as a result of tribal activities, we find that Ms. Ortego's assignment of error on appeal is without merit.

## DECREE

For the foregoing reasons, the ruling granting the defendant's exception of lack of subject matter jurisdiction and dismissing the plaintiff's claims is affirmed. All costs of this proceeding are assigned to the plaintiff-appellant, Kathryn Ortego.

**AFFIRMED.**